In the Matter of PARK EAST CORPORATION et al., Petitioners, and PARK EAST HOSPITAL et al., Intervening Petitioners, v ROBERT P. WHELAN, as Acting Commissioner of Health of the State of New York, Respondent.

First Department, April 15, 1975

*Robert R. MacDonnell* of counsel *(Loren G. Lavine* with him on the brief; *Trubin Sillcocks Edelman & Knapp,* attorneys), for intervening petitioners.

*Martin I. Shelton* of counsel *(Ira Postel* with him on the brief; *Shea Gould Climenko Kramer & Casey,* attorneys), for petitioners.

*Louis J. Lefkowitz, Attorney-General (Robert S. Hammer* and *Samuel A. Hirshowitz* of counsel), for respondent.

KUPFERMAN, J. Petitioners own two proprietary hospitals in Manhattan pursuant to operating certificates issued by the Commissioner of Health. No question has been raised about the hospitals' proper method of operation nor about their service to the community.

In 1971, the owners of the stock of the domestic corporations that operated these two hospitals, all but one of whom are nonresidents living in the United Kingdom, executed an agreement for the sale of their stock to a trust. There was a down payment, and the shares of stock were endorsed in blank and deposited with an escrow agent to be released only upon the approval of the transfer by the Public Health Council and the New York State Department of Health. The stock remained of record in the name of the transferors, although they resigned as directors, and representatives of the transferees succeeded them on the board of directors. Attempts were thereafter made without success to secure the approval of the Public Health Council to the transfer of ownership, and the application was withdrawn. Various plans as to proposed method of ownership were submitted for approval, and finally a new plan was proposed to transfer the ownership of the hospitals to two partnerships which have as their members seven physicians, who are connected with the hospitals, and who, by order of this court, have been permitted to intervene on this appeal. The partnerships have already invested a significant sum in the operation of the hospitals.

In 1974, after the new entity had filed the application to purchase the hospitals, and which application is presently under advisement at the Public Health Council, the Commissioner of Health notified the hospitals of a proceeding to revoke their operating certificates for violation of section 2801-a (subd 4, par [b]) of the Public Health Law and of the concomitant State Hospital Code. Paragraph (b) as aforesaid, provides substantially that any transfer or other disposition of 10% or more of the stock or voting rights of a corporation which operates a hospital, must be approved by the Public Health Council in accordance with the provisions of subdivisions 2

and 3 of section 2801-a and the rules and regulations pursuant thereto, and that in the absence of such approval, the operating certificate of such hospital shall be subject to revocation or suspension. The Public Health Council consists of the Commissioner of Health and 14 members appointed by the Governor with the advice and consent of the senate. (Public Health Law, § 220.)

After hearings, a recommendation was made by the hearing officer to revoke the operating certificates of both hospitals, and the Commissioner of Health directed the revocation and the cessation of operations as of February 28, 1975. A Justice of this court stayed the effect of the determination pending an expedited appeal.

Section 2806 of the Public Health Law gives to the Commissioner of Health the power to proceed as he did, and technically he was correct in that control had been transferred from the owners in the United Kingdom to the representatives of the transferees. While it would appear that a transfer to physicians from the community would be preferable to the previous situation, the able argument by counsel for the Commissioner makes it clear that there can be no doubt that approval was not obtained prior to the effective surrender of control (although proprietorship has not been transferred). (See *Regents v Carroll*, 338 US 586 [1950].)

The punishment of revocation, however, which has been imposed is clearly unreal and harsh. The hospitals seem to be operating in exemplary fashion, the proposed transferees, who are in effective control, are physicians from the community, and the area served is benefited by the continued operation of the hospitals. No suspension or other interruption of services seems warranted, and any disruption can only be harmful to the ongoing services of the hospitals, their employees and patients, and those associated with them.

While the record is not clear as to why an application for transfer of ownership has not been ruled upon by this time, it would seem that in this matter a definitive determination by the Public Health Council should come prior to any sanction being imposed. The intervening petitioners have not operated by stealth. The documents and the related agreements and papers for the sale of the stock were filed with the Public Health Council, and there is no indicia of any untoward aspect.

In connection with the intervention which this court

granted, and for this appeal, the intervenors have submitted affidavits as to, among other things, their service to the community, and a motion has been made on behalf of respondent Commissioner of Health to strike the affidavits and the exhibits annexed thereto on the ground that they are dehors the record and not properly before this court.

It would seem that these papers are cumulative of information that had been submitted to the hearing officer, and our determination can be made without them. (See *Matter of Levine v New York State Liq. Auth.,* 23 NY2d 863 [memo opn. 1969].) Also, that they have been submitted in connection with the argument made by the intervenors that the proceeding is moot, because the operators of the hospitals are the physicians who seek to become the purchasers. While we reject the contention that the problem is moot, we recognize that it is only material outside of the record that can help attempt to demonstrate a moot situation, and so the motion to strike is denied.

In these consolidated article 78 proceedings, removed to this court pursuant to the provisions of CPLR 7804 (subd [g]), the determinations of the respondent Commissioner of Health of the State of New York made January 15, 1975 revoking petitioners' operating certificates, should be modified on the law and in the exercise of discretion to vacate the sanction and remand for further proceedings with respect thereto and in conformance herewith, and otherwise confirmed without costs.

STEVENS, P. J., MARKEWICH, LUPIANO and CAPOZZOLI, JJ., concur.

Two determinations of the respondent, each dated January 15, 1975, unanimously modified, on the law and in the exercise of discretion, to vacate the sanction and remand for further proceedings with respect thereto and in conformance with the opinion of this court filed herein, and otherwise confirmed, without costs and without disbursements.